Burke, J. (concurring).
I agree with Judge Desmond’s opinion affirming appellant’s conviction for criminal contempt.
On February 2, 1959, pursuant to a direction of a County Judge, the Second Additional Grand Jury of the County of Kings commenced an investigation to determine whether the crimes of bribery and conspiracy were being committed by employees and personnel in the office of the Division of Housing and Division of Buildings of the Department of Buildings of the City of New York in the Borough of Brooklyn, County of Kings. The investigation was prompted by complaints of citizens and reports in the public press that such employees had been guilty of accepting bribes and graft.
There is no question that where there is evidence of corruption that the People of the City of New York are entitled to an accounting by their public servants of the public employees’ financial assets for the purpose of ascertaining whether there is graft or corruption or misfeasance in office by these public servants. In the past in the cases of a few individuals, it has been accomplished by oral examination before a Grand Jury.
In this case the appellant is an inspector in the department, one of approximately 300 employees assigned to duties in the Borough of Brooklyn, County of Kings. He, after signing a waiver of immunity, refused upon the advice of his counsel to fill out and return a financial questionnaire which, as Judge Desmond states, consisted of four pages containing simple questions 6 ‘ asking for details of the income of relator and members of his household, the names of banks in which he and his family have accounts, the existence of safe-deposit boxes, life insurance and other policies, stock brokerage accounts and of his charge accounts ”. After having been adjudged guilty of criminal contempt, fined and sentenced to imprisonment, he sought a writ of habeas corpus which has been denied.
The Grand Jury, he asserts, has not been empowered by the People of the State to compel a public employee to complete and answer a questionnaire in addition to giving oral testimony. The Legislature, it is argued, has provided that the only legal evidence permitted is that secured by legal documentary proof by records actually in existence, certain depositions and the oral testimony of witnesses actually produced and sworn (Code *491 Crim. Pro., §§ 248, 249, 392; City of Buffalo v. Hanna Furnace Corp., 280 App. Div. 623, revd. on other grounds 305 N. Y. 369).
A public employee, therefore, who has obeyed the command, of a subpoena, has appeared before the Grand Jury, has permitted himself to be sworn and has agreed to answer all proper questions, but states he has no financial status records actually in existence, the appellant concludes, has complied fully with the mandate of the statutes and may not be punished for contempt.
The question to be determined is whether the Grand Jury had the power to direct a witness who has waived immunity to answer a simple questionnaire dealing with the facts of the financial status of a person which can be answered in a reasonable time without any professional help or advice.
We believe a Grand Jury has such power. No sections of the Code of Criminal Procedure or decision of any appellate court authorize the suppression of this kind of an inquiry by a Grand Jury.
Since the Grand Jury has the power to investigate corruption, bribery and other crimes committed in the Department of Buildings, the grant of express statutory authority to the Grand Jury imports the existence of implied powers reasonably essential to the investigation and uncovering of crime and corruption. Obviously, evidence of possession of financial assets or income in amounts not justified or accountable for by salary and other legitimate origins is a pertinent source of inquiry where the misconduct of a public officer is the subject of probe (People v. Connolly, 253 N. Y. 330). Under such circumstances, to ascertain whether employees of a department accepted bribes, an inquiry into their financial status is a method of procedure reasonably essential to the proper discharge of the Grand Jury’s duty to examine into the willful misconduct of public officials.
Inquiry through the media of questionnaires is a method appropriate to the express power and duty of a Grand Jury to investigate corruption in public office. The best evidence of financial status would be a completed financial questionnaire, prepared by the public officer.
The request to answer a questionnaire in writing violates no fundamental right or prerogative of a witness before the Grand Jury. This court has sustained convictions of crimes predicated *492 upon financial questionnaires. (People v. Workman, 308 N. Y. 668; People v. O’Brien, 281 App. Div. 982, affd. 305 N. Y. 915; People v. Vigorito, 281 App. Div. 1043, leave to appeal denied.)
The argument that this duty is discharged when he speaks on the witness stand or produces documents already in existence in response to a subpoena duces tecum has not been accepted by the courts. The courts have the power not only to compel answers from witnesses, but to require them to do things and acts incidental to answers. (See Allen v. State, 183 Md. 603, Ann. 171 A. L. R. 1144 et seq.)
It may be that, if the questions are too complicated and involved, the witness may attack items on the questionnaire as being an oppressive exercise of the power of a Grand Jury to compel answers thereto (Matter of Cole [Reiss], 208 Misc. 697, 703). But the broad powers of a Grand Jury investigating into corruption in public office should not be hampered and curtailed by judicial contentions as to whether it should adopt one approach as distinguished from another.
As the Grand Jury has the right to compel this witness to answer each of these simple questions orally in the presence of the Grand Jury, it has the power in this case to compel him to answer the questions in writing on a brief questionnaire and return it to the Grand Jury and with it to testify orally as to its contents.
The entire procedure from the delivery of the questionnaire to the witness and its return to the Grand Jury with it completed is embraced in the concept of ‘ ‘ testimony ’ \
Any suggestion that each one of the 300 employees of the Department of Buildings in the Borough of Brooklyn can be interrogated only orally would be manifestly absurd. If the information was not within the memory of each one of the 300 witnesses then each of them would be required to be excused and compelled to return at a later date to answer further questions, with further adjournments until the entire investigation would be frustrated and the ends of justice defeated. It would effectively impede the Grand Jury in the discharge of its statutory duty to investigate corruption among public officials.
The procedure adopted by the Grand Jury is logical and equally advantageous to the witness and the Grand Jury. It does not trespass on any fundamental or constitutional rights of the witness or constitute a hardship to the witness.
*493 As the appellant has failed to show that he has been subjected to oppressive process in compelling his testimony, the order appealed from should be affirmed.